Jennifer Romano (SBN 195953)
jromano@crowell.com
Junga P. Kim (SBN 198980)
jpkim@crowell.com
Kelsey A. Hill (SBN 329496)
khill@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

*Attorneys for Defendant,*
UHC of California (erroneously sued as "United HealthCare Services, Inc.")

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

CATHERINE BROWN, AS SUCCESSOR-IN-INTEREST TO LILLIAN MARIE BROWN, DECEASED,

Plaintiff,

vs.

ARROWHEAD REGIONAL MEDICAL CENTER, COUNTY OF SAN BERNARDINO, SAN ANTONIO REGIONAL HOSPITAL, UPLAND REHABILITATION AND CARE CENTER, UNITED HEALTHCARE SERVICES, INC., and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:26-cv-00658-DTB

**DEFENDANT UHC OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF LAW IN SUPPORT THEREOF**

Date: March 19, 2026
Time: 10:00 a.m.
Place: Courtroom 4, 3rd Floor

Compl. Filed: December 5, 2025
Case Removed: February 12, 2026

Magistrate Judge David T. Bristow

[*Filed concurrently with Declaration of Jennifer C. Graham; Request for Judicial Notice; [Proposed] Order Granting Motion to Dismiss; [Proposed] Order Granting Request for Judicial Notice*]

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 19, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 4, 3rd Floor of the above-entitled Court, located at 3470 Twelfth Street, Riverside, California 92501, Defendant UHC of California ("UHCCA"), erroneously sued as United HealthCare Services, Inc. ("UHS"), will and hereby does move for an order dismissing the Complaint of Plaintiff Catherine Brown ("Plaintiff"), as successor-in-interest to the decedent, Lillian Marie Brown ("Ms. Brown"), and each and every claim set forth therein, including her wrongful death claim and survivorship action, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

This Motion is brought on the ground that the Complaint, and each claim for relief alleged therein, is preempted by the Medicare Act, 42 U.S.C. §§ 1395w-21 through 1395w-28, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "Medicare Act").

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 17, 2026. In anticipation of this Motion, counsel for UHCCA sent counsel of record for Plaintiff an email on February 13, 2026, identifying the basis of UHCCA's Motion to Dismiss and asking to meet and confer. Despite telephonically meeting and conferring on February 17, 2026 to further discuss the issues, counsel did not reach an agreement to eliminate the necessity for a hearing.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Law, the pleadings and filings in this case, and upon any additional matter or argument that may be presented by counsel at the hearing on this Motion.

DATED: February 19, 2026

**CROWELL & MORING LLP**

By: /s/ Jennifer Romano
Jennifer Romano
Junga P. Kim
Kelsey A. Hill

*Attorneys for Defendant,*
UHC of California (erroneously sued as "United HealthCare Services, Inc.")

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS .............. 1
I. INTRODUCTION .............................................................................. 1
II. RELEVANT PLEADINGS AND BACKGROUND .................................... 2
A. Plaintiff's Allegations Regarding Ms. Brown ..................................... 2
B. The UHCCA MA Plan and The Medicare Advantage Statutory and Regulatory Scheme ........................................................... 3
III. LEGAL STANDARD ............................................................................ 5
IV. LEGAL ARGUMENT ........................................................................... 6
A. The Medicare Act Expressly Preempts All State Laws That Interfere With or Undermine Federal Medicare Standards .................. 6
B. Plaintiff's State-Law Causes of Action Are Preempted Because They Challenge Authorization Determinations and Benefit Administration Governed by Medicare .............................................. 10
V. CONCLUSION ................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmad v. UnitedHealth Group Inc.*, No. 8:23-cv-02303-MRA, 2025 WL 1271922 (C.D. Cal. March 28, 2025) .......... 4

*Aylward v. SelectHealth, Inc.*, 35 F.4th 673 (9th Cir. 2022) .......... 3, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5

*Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480 (7th Cir. 1990) .......... 4

*CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1983) .......... 6

*Do Sung Uhm v. Humana Inc.*, 620 F.3d 1134 (9th Cir. 2010) .......... *passim*

*English v. General Elec. Co.*, 496 U.S. 72 (1990) .......... 6

*Escarcega v. Verdugo Vista Operating Co., LP*, No. CV 19-9478-GW, 2020 WL 1703181 (C.D. Cal. Apr. 8, 2020) .......... 8

*Firefighters' Ret. Sys. v. Grant Thornton, LLP*, 894 F.3d 665 (5th Cir. 2018) .......... 5

*Gade v. Nat'l Sold Wasters Mgmt. Ass'n*, 505 U.S. 88 (1992) .......... 5

*Global Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905 (9th Cir. 2022) .......... 4, 10

*Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc. v. Emmanuelli Hernandez*, 58 F.4th 5 (1st Cir. 2003) .......... 7

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ..... 5

*Phillips v. Kaiser Found. Health Plan, Inc.*,
953 F. Supp. 2d 1078 (N.D. Cal. 2011) ..... 4

*Quishenberry v. UnitedHealthcare, Inc.*,
14 Cal. 5th 1057 (2023) ..... 7, 9, 10

*Roberts v. United Healthcare Services, Inc.*,
2 Cal. App. 5th 132 (2016) ..... 6, 7, 9, 10

*Rudek v. Presence Our Lady of Resurrection Medical Center*,
No. 13 C 06022, 2014 WL 5441845 (N.D. Ill. Oct. 27, 2014) ..... 12

*Sanders v. Brown*,
504 F.3d 903 (9th Cir. 2007) ..... 5

*Shakespeare v. SCAN Health Plan, Inc.*,
No. 3:17-cv-568-BTM, 2018 WL 340422 (S.D. Cal. Jan. 8, 2018) ..... 12

*Yarick v. PacifiCare of California*,
179 Cal. App. 4th 1159 (2009) ..... 8, 9, 10

**Statutes**

42 U.S.C. § 1395c ..... 3

42 U.S.C. § 1395w-22(d) ..... 11

42 U.S.C. § 1395w-23 ..... 4

42 U.S.C. § 1395w-24 ..... 4

42 U.S.C. § 1395w-26(b)(3) ..... 1, 6, 8

Medicare Act, 42 U.S.C. §§ 1395w-21 through 1395w-28 ..... *passim*

**Other Authorities**

42 C.F.R. § 422.100(b)(1)(ii) ..... 11

42 C.F.R. § 422.101(a) ..... 8, 12

42 C.F.R. § 422.111 ..... 4

42 C.F.R. § 422.112(a) .......... 8, 11

42 C.F.R. § 422.113(b) .......... 11

42 C.F.R. § 422.402 .......... 6

42 C.F.R. § 422.503 .......... 4

42 C.F.R. §422.504 .......... 4

42 C.F.R. § 422.504(a) .......... 8, 11

42 C.F.R. § 422.2260 .......... 4

42 C.F.R. § 422.2261 .......... 4

42 C.F.R. §§ 422.2267(b)(1), (e)(1) .......... 4

Rule 12(b)(6) .......... 5

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION

Defendant UHC of California ("UHCCA"), erroneously sued as United HealthCare Services, Inc. ("UHS"), is a Medicare Advantage Organization ("MAO") charged with administering the Medicare Advantage health plan at issue here (the "UHCCA MA Plan"). Plaintiff's mother, Lillian Marie Brown ("Ms. Brown"), was a Medicare beneficiary enrolled in the UHCCA MA Plan. In this case, Plaintiff alleges that UHCCA failed to authorize a facial surgery for Ms. Brown under the UHCCA MA Plan after Ms. Brown fell at her home. Plaintiff's causes of action for wrongful death and survivorship against UHCCA are based entirely on allegations that UHCCA did not authorize the surgery under the UHCCA MA Plan.

However, the Medicare Act, 42 U.S.C. §§ 1395w-21 through 1395w-28, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "Medicare Act"), and its implementing regulations, as well as policy determinations by the administering federal agency, the Centers for Medicare and Medicaid Services ("CMS"), exclusively govern UHCCA's administration of benefits under the UHCCA MA Plan. The Medicare Act broadly preempts state law and any state standard that would otherwise apply to a MA plan, except with respect to state licensure and plan solvency. *See* 42 U.S.C. § 1395w-26(b)(3). Because CMS promulgated standards governing the availability of covered services under Medicare, including standards addressing urgently needed services, those standards "fall within the ambit" of the Medicare Act's expansive preemption clause. *See Do Sung Uhm v. Humana Inc.*, 620 F.3d 1134, 1149 (9th Cir. 2010) (holding that state statutory and common law claims predicated on conduct regulated by the Medicare Act and its implementing regulations are expressly and broadly preempted).

Plaintiff's state-law causes of action would impose non-federal standards on

federally regulated MA plan coverage and authorization determinations and thereby undermine the Medicare scheme. Plaintiff's claims are expressly preempted under the UHCCA MA Plan. Because Plaintiff cannot bring state-law causes of action arising out of the UHCCA MA Plan coverage and authorization determinations, her Complaint fails to state a claim upon which relief may be granted and should be dismissed.

## II. RELEVANT PLEADINGS AND BACKGROUND

### A. Plaintiff's Allegations Regarding Ms. Brown

In the Complaint, Plaintiff — the daughter and successor-in-interest to decedent Lillian Marie Brown — alleges that Ms. Brown had health insurance coverage under a health insurance plan issued by UHS. Complaint ("Compl."), ¶ 5. Although Plaintiff identifies UHS as the entity that issued coverage, Ms. Brown was, in fact, insured under a Medicare Advantage plan administered by UHCCA for the 2024 Calendar Year. *See* Request for Judicial Notice ("RJN"), Ex. A (Evidence of Coverage); Declaration of Jennifer C. Graham ("Graham Decl."), ¶¶ 3-5.

Plaintiff alleges that, on December 7, 2024, Ms. Brown sustained a facial injury in a fall at her home that required maxillofacial surgery. Compl., ¶¶ 12-13. She was transported to the emergency department at Defendant San Antonio Regional Hospital ("San Antonio Regional") to receive treatment. *Id.* Because of the nature of her injury, Ms. Brown was transferred from San Antonio Regional to Defendant Arrowhead Regional Medical Center ("Arrowhead Regional") on December 8, 2024. *Id.*, ¶¶ 14, 16. Plaintiff contends that Arrowhead Regional was an "out-of-network" facility with UHCCA, meaning that Arrowhead Regional had no contract with UHCCA. *Id.* Plaintiff alleges that Arrowhead Regional's oral and maxillofacial surgery department evaluated Ms. Brown and determined that she required facial surgery within two weeks. *Id.*, ¶ 19.

Plaintiff further alleges that UHCCA denied inpatient authorization for a facial surgery under the UHCCA MA Plan based on Arrowhead Regional's out-of-

network status. *Id.*, ¶¶ 20-21. She alleges that after the alleged initial denial, Arrowhead Regional appealed, but UHCCA did not authorize the procedure to be performed at Arrowhead Regional. *Id.*, ¶ 24. Plaintiff asserts that, in the absence of authorization, Arrowhead Regional refused to timely perform the surgery, which Plaintiff contends was medically necessary. *Id.*, ¶¶ 24, 30.

Plaintiff alleges that Ms. Brown's condition then deteriorated. *See id.*, ¶¶ 25-28. Ms. Brown was later transferred to Defendant Upland Rehabilitation and Care Center ("Upland Rehab") for skilled nursing and rehabilitation where Plaintiff alleges that Ms. Brown developed several bacterial infections while under Upland Rehab's care. *See id.* Plaintiff alleges that Ms. Brown ultimately passed away on September 16, 2025, at Kindred Hospital. Plaintiff alleges that Ms. Brown's death was due to the lack of authorization for the facial surgery, and substandard medical care at Arrowhead Regional and Upland Rehab. *See id.*, ¶¶ 40, 42.

As to UHCCA, Plaintiff asserts causes of action for wrongful death and survivorship and seeks economic and non-economic damages, court costs, and funeral/burial expenses arising from the alleged failure to authorize medically necessary care to Ms. Brown. *See generally,* Compl. To the extent that the alleged authorization denials occurred, each of Plaintiff's causes of action against UHCCA arises exclusively from UHCCA's administration of, and coverage determinations regarding, Medicare benefits under the UHCCA MA Plan. *See id.*, ¶¶ 19-24.

**B. The UHCCA MA Plan and The Medicare Advantage Statutory and Regulatory Scheme**

The UHCCA MA Plan was governed by the Medicare Act. 42 U.S.C. §§ 1395w-21 through 1395w-28; *see also Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 675 (9th Cir. 2022) (explaining that MA plans are governed by Part C of the Medicare Act). The Medicare Act established a federally subsidized health insurance program for elderly individuals and certain persons with disabilities. 42 U.S.C. § 1395c. The Secretary of Health and Human Services is responsible for

administering Medicare through CMS, a federal agency within the Department of Health and Human Services. *See Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487 (7th Cir. 1990). Medicare is comprised of four distinct parts: Part A and Part B (Original Medicare) providing traditional fee-for-service coverage; Part C (relevant here) authorizing Medicare Advantage; and Part D providing prescription drug coverage. *See Ahmad v. UnitedHealth Group Inc.*, No. 8:23-cv-02303-MRA, 2025 WL 1271922, at *1 n.1 (C.D. Cal. March 28, 2025) (providing an overview of Medicare).

The UHCCA MA Plan was a Part C plan. *See* Graham Decl., ¶ 4. Under Part C, Medicare-eligible individuals may elect to receive their Part A and Part B benefits through a private health insurance plan administered by an MAO like UHCCA. 42 U.S.C. §§ 1395w-21 through 1395w-28; *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1081 (N.D. Cal. 2011). MAOs contract with CMS to provide Medicare-covered benefits to enrollees who choose a MA plan. *Phillips*, 953 F. Supp. 2d at 1082. In exchange, CMS pays MAOs a fixed per-member-per-month amount for each enrollee. *See Global Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 909 (9th Cir. 2022) (describing the Medicare Advantage program); *see also* 42 U.S.C. §§ 1395w-23, 1395w-24. The CMS contract, along with the comprehensive federal statutes, regulations and CMS guidance, prescribe the standards that MAOs must follow when administering benefits, including when making coverage and authorization determinations. *See, e.g.,* 42 C.F.R. §§ 422.503, 422.504. In addition, for Part C MA plans, CMS approves the plan terms set forth in the Explanation of Coverage ("EOC") and other standardized plan materials annually, and their content is governed by the Medicare Act and its regulations. *See* 42 C.F.R. §§ 422.2267(b)(1), (e)(1) (providing that "standardized material," including the EOC, "are required materials and content that must be used in the form and manner provided by CMS . . . without alteration"); *see also* 42 C.F.R. §§ 422.111, 422.2260, 422.2261; 422.2262(a),

422.2264.

Consistent with these requirements, coverage and authorization determinations under the UHCCA MA Plan were governed by Medicare coverage rules and CMS standards. *See* RJN, Ex. A at p. 32 ("As a Medicare health plan, UnitedHealthcare Group Medicare Advantage (HMO) must cover all services covered by Original Medicare and must follow Original Medicare's coverage rules."); p. 45 ("Your Medicare-covered services must be provided according to the coverage guidelines established by Medicare.").

## III. LEGAL STANDARD

Rule 12(b)(6) permits dismissal of a complaint where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead enough factual matter, accepted as true, to "state a claim that is plausible on its face." *Firefighters' Ret. Sys. v. Grant Thornton, LLP*, 894 F.3d 665, 669 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (internal quotations omitted). In evaluating a motion to dismiss, a court may incorporate by reference documents outside the pleadings but referenced in the complaint or which are central to the claims, such as the UHCCA MA Plan. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

A motion to dismiss based on federal preemption is appropriate where state law is either expressly or impliedly preempted based on a showing that "Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *See Gade v. Nat'l Sold Wasters Mgmt. Ass'n*, 505 U.S. 88, 96 (1992); *see also Do Sung Uhm*, 620 F.3d at 1137, 1157 (dismissing the complaint on the ground that the plaintiffs' claims were "preempted by the express preemption provision of the [Medicare Act]").

## IV. LEGAL ARGUMENT

Plaintiff's Complaint should be dismissed in its entirety because Plaintiff states only state-law claims that are all preempted under the Medicare Act. The MA program is "a federal program operated under Federal rules," and Congress intended those rules to govern without state law undermining CMS's determinations or ability to create its own standards. *Do Sung Uhm*, 620 F.3d at 1149-50, 1157. Because Plaintiff's claims against UHCCA relate solely to UHCCA's administration of the UHCCA MA Plan, including coverage determinations under the MA Plan, they are preempted. The Medicare Act provides an administrative review scheme designed to leverage CMS's expertise and provide CMS the opportunity to address any issues. *Id.* at 1141-44. That is Plaintiff's exclusive remedy against UHCCA.

### A. The Medicare Act Expressly Preempts All State Laws That Interfere With or Undermine Federal Medicare Standards

The 2003 Amendment to the Medicare Act contains an express preemption provision for all MA plans:

> The standards established under this part ***shall supersede*** any State law or regulation (other than State licensing laws or State law relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3) (emphasis added); *see also* 42 C.F.R. § 422.402. This language "means what it says": Medicare Advantage standards supersede "***any*** State law or regulation" "with respect to" MA plans, subject only to the limited licensing and solvency carve-outs. *Roberts v. United Healthcare Services, Inc.*, 2 Cal. App. 5th 132, 143 (2016) (emphasis added). This is because when Congress includes an express preemption clause, the analysis "must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1983), *superseded by statute on other grounds*; *see also English v. General Elec.*

*Co.*, 496 U.S. 72, 79 (1990) (explaining that where, as here, "Congress has made its intent known through explicit statutory language, the courts' take is an easy one").

In *Do Sung Uhm*, the Ninth Circuit explained that the 2003 amendment to the Medicare Act broadened preemption. Before 2003, the statute preempted state laws only to the extent they were "*inconsistent with*" federal standards.[1] In the 2003 amendment, Congress removed that limiting language with the intent "to broaden the preemptive effects of the Medicare statutory regime." *Do Sung Uhm*, 620 F.3d at 1149 (citing the Conference Report accompanying the 2003 amendment, which explained that, in striking the clause, Congress intended to address "some confusion in recent court cases" and "clarif[y] that the MA program is a federal program operated under Federal rules"). Because the current preemption provision applies broadly to "any State law or regulation," not just those that are inconsistent with federal standards, a court need not find any kind of conflict or interference between state law and the prescribed federal standards for preemption. *See Quishenberry v. UnitedHealthcare, Inc.*, 14 Cal. 5th 1057, 1067 (2023); *see also Aylward*, 35 F.4th at 681 (explaining that the preemption provision applies not just where state law conflicts with the federal regulations, but also where it "parallels, enforces, or supplements an express federal MA standard" under Part C of the Medicare Act).

The Ninth Circuit also confirmed in *Do Sung Uhm* that the phrase "with respect to" MA plans does not confine preemption to state laws that specifically target MA plans; generally applicable state statutes and common-law causes of action are also preempted where they operate "with respect to" a MA plan by regulating areas governed by federal standards. *Do Sung Uhm*, 620 F.3d at 1150 n.24 and 1155 n.25. Specifically, the Ninth Circuit held that state common law

[1] A "standard" within the meaning of the preemption provision is a statutory provision or a regulation promulgated under the Medicare Act and promulgated in the Code of Federal Regulations. *See Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc. v. Emmanuelli Hernandez*, 58 F.4th 5, 14 n.6 (1st Cir. 2003). Thus, if CMS has issued a regulation on a subject related to a member's dispute with an MAO, then the member's state law claims arising from that dispute are preempted. *Roberts*, 2 Cal. App. 5th at 143.

fraud and statutory consumer protection claims based on allegations that an insurer failed to timely provide prescription benefits and misrepresented MA plan benefits were preempted because the conduct underlying such allegations "is directly governed by federal standards," and state-law liability could "undermine" Medicare standards for non-misleading materials. *Id.* at 1150, 1152, 1156-58.

Consistent with *Do Sung Uhm*, federal and California state courts repeatedly hold that state-law causes of action that intrude upon, or interfere with, Medicare Advantage's uniform federal standards are broadly preempted. *See* 42 U.S.C. § 1395w-26(b)(3) ("The standards established under this part shall supersede any state law or regulation . . ."). For instance, in *Yarick v. PacifiCare of California*, 179 Cal. App. 4th 1159 (2009), the decedent's estate sued a defendant-insurer for inadequate care and denial of medically reasonable treatment under a MA plan based on purported duties arising from California statutes. *See Yarick*, 179 Cal. App. 4th at 1161-62. Specifically, all the plaintiff's causes of action for common law negligence, elder abuse, and wrongful death were premised on the defendant's alleged obligations arising from California's Knox-Keene Act and the Health and Safety Code. *Id.* at 1166-67. The court held that each claim was preempted:

> Federal regulations comprehensively establish standards [regarding]: provision of sufficient and timely services . . . and duty of the plan to ensure that providers provide adequate and timely care . . . Accordingly, by the express terms of the federal preemption statute, the standards established under the Health and Safety Code are superseded. As a result, [the Knox-Keene Act and Health and Safety Code] cannot supply the standard of care for" the defendant's alleged duty.

*Id.* at 1166-67 (citing 42 C.F.R. §§ 422.101(a), 422.112(a), 422.504(a)). The court further held that, in the event "state common law judgments were permitted to impose damages on the basis of [a CMS-approved MA plan]," the federal government "would lose control of the regulatory authority that is at the very core of Medicare generally and the MA program specifically." *Id.* at 1167-68; *see also Escarcega v. Verdugo Vista Operating Co., LP*, No. CV 19-9478-GW, 2020 WL

1703181, at *6 (C.D. Cal. Apr. 8, 2020) (holding that the Medicare Act preempted a wrongful death claim based on the defendant's failure to approve a request for transfer, as the court would need to determine whether the defendant should have transferred the decedent to a different facility to determine liability, which would conflict with the Medicare Act).

Similarly, in *Quishenberry*, the son of a patient sued a MA plan and healthcare services administrator, alleging state-law causes of action for negligence, elder abuse, and wrongful death based on allegations that the defendants breached a duty to ensure his father received skilled nursing benefits to which he was entitled under the MA plan. *Quishenberry*, 14 Cal. 5th at 1057, 1072. In holding that the plaintiff's causes of action were expressly preempted, the California Supreme Court reasoned that the defendants' liability "would involve applying standards established under Part C" governing MAOs and therefore "hinge[d] on a determination of noncompliance with a duty rooted in federal standards established under Part C." *Id.* at 1072-73. Since resolution of the plaintiff's causes of action "would ultimately turn on the determination whether his father qualified for additional skilled nursing facility care under Part C and related regulations," they were based on duplicative state standards and preempted by the Medicare Act. *Id.* at 1073-74.

In *Roberts*, the California Court of Appeal likewise held that state-law causes of action were preempted by the Medicare Act where the plaintiff alleged that a defendant-insurer failed to offer an in-network urgent care provider within a reasonable distance of the plaintiff's home as represented in the MA plan's marketing materials. *Roberts*, 2 Cal. App. 5th at 137-38. The court held that because the Medicare Act set forth standards governing both network adequacy (including a requirement that each plan must "provide coverage for . . . emergency and urgently needed services") and the content of a MA plan's marketing materials, "those standards fall within the ambit of the preemption clause" and preempt the

plaintiff's causes of action for violation of the unfair competition law, unjust enrichment, and elder abuse. *Id.* at 140-41,143. In *Roberts,* the court went on to explain that courts considering the current express preemption clause "have interpreted it to displace state laws to the extent they ***touch upon*** areas regulated by the Medicare Advantage standards." *Id.* at 144 (emphasis added).

**B. Plaintiff's State-Law Causes of Action Are Preempted Because They Challenge Authorization Determinations and Benefit Administration Governed by Medicare**

Plaintiff's wrongful death claim and survival action against UHCCA are preempted by the Medicare Act because they are premised entirely on allegations that UHCCA failed to authorize a facial surgery under the UHCCA MA Plan. *See* Compl., ¶¶ 20-21. Plaintiff's allegations necessarily call for a review of UHCCA's coverage and authorization determinations and administration of Medicare benefits, which are subjects governed by the Medicare Act and CMS regulations and guidance. Because federal standards already apply, Plaintiff cannot use state-law causes of action to impose alternative or additional requirements. *See Do Sung Uhm*, 620 F.3d at 1149; *Quishenberry*, 14 Cal. 5th at 1073-74; *Roberts*, 2 Cal. App. 5th at 144.

Here, adjudicating Plaintiff's causes of action in this lawsuit would require the Court to determine whether the requested facial surgery should have been authorized and covered under Medicare coverage rules and CMS standards, not state principles. *See Global Rescue Jets,* 30 F.4th at 914 (finding that "when disputes arise as to whether a particular service would or would not have been covered . . . interpretation of Medicare regulations issued by CMS defining the scope of coverage will still be necessary"). The Medicare Act and its regulations already establish specific standards for the actual and timely coverage of medically necessary services — including the provision of urgently needed services — and thus govern the availability of covered services. *See Yarick*, 179 Cal. App. 4th at

1166-67 (finding that the plaintiff's state-law causes of action based on alleged denial of medically reasonable services were preempted by Medicare regulations); *see also* 42 U.S.C. § 1395w-22(d) (Medicare Advantage requirements regarding providing access to medically necessary services "with reasonable promptness"); 42 C.F.R. § 422.112(a) (Medicare Advantage requirements regarding availability of, and adequate access to, covered services, including urgently needed services).

The table below summarizes Plaintiff's allegations against UHCCA and identifies the corresponding and overlapping Medicare standards governing those same issues:

| Allegations Supporting State-Law Causes of Action | Corresponding Federal Medicare Standards |
|---|---|
| **Coverage/Medical Necessity Determination**<br><br>Paragraphs 21-22, 24: UHCCA allegedly failed to approve a facial surgery at Arrowhead Regional, which Plaintiff alleges was "medically necessary." | • 42 C.F.R. § 422.504(a): Medicare Advantage requirements regarding an MAO's agreement to comply with Medicare coverage determination requirements and provide benefits "[i]n a manner consistent with professionally recognized standards of health care" |
| **Timing/Reasonable Promptness**<br><br>Paragraphs 19-24: UHCCA allegedly failed to provide access to a medically necessary procedure within 2 weeks of Ms. Brown's facial injury. | • 42 U.S.C. § 1395w-22(d): Medicare Advantage requirements concerning access to medically necessary services "with reasonable promptness" |
| **Urgently Needed Services**<br><br>Paragraphs 19-24: The requested facial surgery was allegedly "urgently needed," yet UHCCA denied inpatient authorization for the surgery. | • 42 C.F.R. § 422.100(b)(1)(ii): Medicare Advantage requirements concerning an MAO's payment for "urgently needed services"<br>• 42 C.F.R. § 422.112(a): Medicare Advantage requirements concerning availability of, and adequate access to, covered services, including "urgently needed" services<br>• 42 C.F.R. § 422.113(b): Medicare Advantage requirements concerning the |

| Allegations Supporting State-Law Causes of Action | Corresponding Federal Medicare Standards |
|---|---|
| | provision of "urgently needed" services |
| **Out-of-Area/Out-of-Network Coverage**<br><br>Paragraphs 16-17, 21: The allegations implicate whether benefits must be furnished when care is sought outside the MA plan's service area. | • 42 C.F.R. § 422.101(a): Medicare Advantage requirements regarding benefits within and outside the MA plan's service area |

As illustrated above, any attempt to impose state-law liability based on UHCCA's handling of coverage and authorization under the UHCCA MA Plan is expressly preempted because federal standards govern these determinations. Where, as here, state-law claims are "at bottom, complaining about a denial and delay of Medicare benefits," they are preempted because any state law-based decision by the Court would "directly undermine," and effectively regulate, matters comprehensively governed by the Medicare Act and its implementing regulations, including coverage determinations, authorization standards, and access to urgently needed services. *See Shakespeare v. SCAN Health Plan, Inc.*, No. 3:17-cv-568-BTM, 2018 WL 340422, at *6 (S.D. Cal. Jan. 8, 2018) (dismissing the plaintiff's state-law claims because application of state law "would directly undermine the standards set by CMS on when [the service] is covered by Medicare); *see also Rudek v. Presence Our Lady of Resurrection Medical Center*, No. 13 C 06022, 2014 WL 5441845, at *5-6 (N.D. Ill. Oct. 27, 2014) (dismissing the plaintiff's statutory and common law claims based on a coverage notice, given "the detailed regulations pertaining to the provision of notice, and the Medicare Act's broad preemption provision"). Accordingly, under the Medicare Act's express preemption clause, Plaintiff's state-law causes of action for wrongful death and survivorship, each premised on UHCCA's alleged denial of authorization, are expressly preempted and must be dismissed under Rule 12(b)(6).

## V. CONCLUSION

For the reasons set forth more fully above, Plaintiff fails to state any viable cause of action against UHCCA. Therefore, the Court should dismiss the Complaint as to UHCCA under Rule 12(b)(6).

DATED: February 19, 2026

**CROWELL & MORING LLP**

By: /s/ Jennifer Romano
Jennifer Romano
Junga P. Kim
Kelsey A. Hill

*Attorneys for Defendant,*
UHC of California (erroneously sued as "United HealthCare Services, Inc.")