Jennifer Romano (SBN 195953)
jromano@crowell.com
Junga P. Kim (SBN 198980)
jpkim@crowell.com
Kelsey A. Hill (SBN 329496)
khill@crowell.com
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

*Attorneys for Defendant,*
UHC of California (erroneously sued as "United HealthCare Services, Inc.")

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

CATHERINE BROWN, AS SUCCESSOR-IN-INTEREST TO LILLIAN MARIE BROWN, DECEASED,

Plaintiff,

vs.

ARROWHEAD REGIONAL MEDICAL CENTER, COUNTY OF SAN BERNARDINO, SAN ANTONIO REGIONAL HOSPITAL, UPLAND REHABILITATION AND CARE CENTER, UNITED HEALTHCARE SERVICES, INC., and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:26-cv-00658-KK-ACCVx

**DEFENDANT UHC OF CALIFORNIA'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND ACTION TO SAN BERNARDINO COUNTY SUPERIOR COURT**

Date: April 16, 2026
Time: 9:30 a.m.
Place: Courtroom 3

Compl. Filed: December 5, 2025
FAC Filed: March 23, 2026
Case Removed: February 12, 2026

District Judge Kenly Kiya Kato
Magistrate Judge Angela C. C. Viramontes

[*Filed concurrently with [Proposed] Order*]

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND ........ 3
A. As an MAO, UHCCA is a Highly-Regulated Federal Contractor That Administers Medicare Benefits Pursuant to Its Contract with CMS. ........ 3
B. Plaintiff's Claims Against UHCCA in the Original Complaint Are Based Solely on UHCCA's Coverage and Authorization Determinations Under Ms. Brown's CMS-Approved MA Plan. ........ 4
III. LEGAL STANDARD ........ 5
A. UHCCA's Jurisdictional Allegations Must Be Accepted as True Because Plaintiff Mounts Only a Facial Attack to Jurisdiction. ........ 5
B. The Federal Officer Removal Statute Is Broadly Construed in Favor of Removal. ........ 6
IV. LEGAL ARGUMENT ........ 7
A. Plaintiff Does Not Dispute That UHCCA is a "Person" Within the Meaning of Section 1442. ........ 8
B. There is a "Causal Nexus" Between Plaintiff's Claims Against UHCCA in the Original Complaint and UHCCA's Actions Taken Under CMS' Direction in Implementing the Federal Medicare Program. ........ 8
1. UHCCA Was "Acting Under" CMS When It Administered Ms. Brown's MA Plan. ........ 9
2. Plaintiff's Claims Against UHCCA in the Original Complaint Are Causally Connected to UHCCA's Federally Directed Conduct. ........ 12
C. UHCCA Has a "Colorable Federal Defense" of Preemption Under the Medicare Act. ........ 14
1. Plaintiff's State-Law Causes of Action Are Preempted by the Medicare Act's Broad Preemption Statute. ........ 15
V. CONCLUSION ........ 19




CROWELL & MORING LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Arias v. Residence Inn*, 936 F.3d 920 (9th Cir. 2019) .......... 6

*Aylward v. SelectHealth, Inc.*, 35 F.4th 673 (9th Cir. 2022) .......... *passim*

*Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022) .......... 9

*DeFiore v. SOC LLC*, 85 F.4th 546 (9th Cir. 2023) .......... 13

*Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010) .......... 16

*Doe v. Cedars-Sinai Health System ("Cedars-Sinai")*, 106 F.4th 907 (9th Cir. 2024) .......... 10, 11

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006) .......... 3, 6, 7, 8

*Escarcega v. Verdugo Vista Operating Co., LP*, No. CV 19-9478-GW, 2020 WL 1703181 (C.D. Cal. Apr. 8, 2020) .......... 6, 10, 14, 15

*Friedenberg v. Lane Cnty.*, 68 F.4th 1113 (9th Cir. 2023) .......... 6, 7

*Global Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905 (9th Cir. 2022) .......... 3, 4

*Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237 (9th Cir. 2017) .......... *passim*

*Gordy v. CareMore Health Plan*, No. SACV 19-00048 JVS, 2019 WL 1237421 (C.D. Cal. Mar. 18, 2019) .......... 12

*Inchauspe v. Scan Health Plan*,
No. 2:17-CV-06011-CAS, 2018 WL 566790 (C.D. Cal. Jan. 23, 2018) .......... 6, 10

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999) .......... 7, 14, 18

*Lake v. Ohana Military Communities, LLC*,
14 F.4th 993 (9th Cir. 2021) .......... 13

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... *passim*

*Machnik v. Buffalo Pumps, Inc.*,
506 F. Supp. 2d 99 (D. Conn. 2007) .......... 7

*Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc. v. Emanuelli Hernandez*,
58 F.4th 5 (1st Cir. 2023) .......... 15, 16, 17, 18

*Mesa v. Cal.*,
489 U.S. 121 (1989) .......... 14

*Pecover v. Elec. Arts, Inc.*,
633 F. Supp. 3d 976 (N.D. Cal. 2009) .......... 8

*Quishenberry v. UnitedHealthcare, Inc.*,
14 Cal. 5th 1057 (2023) .......... 15, 16

*Salter v. Quality Carriers, Inc.*,
974 F.3d 959 (9th Cir. 2020) .......... 6

*Cal ex. rel. San Diego Comprehensive Pain Mgmt. Ctr., Inc. v. Eisengrein*,
No. 22-CV-1648-BAS, 2023 WL 3806363 (S.D. Cal. June 2, 2023) .......... 10

*Stirling v. Minasian*,
955 F.3d 795 (9th Cir. 2020) .......... 14

*Watson v. Philip Morris Cos., Inc.*,
551 U.S. 142 (2007) .......... 9

*Willingham v. Morgan*,
395 U.S. 402 (1969) .......... 8

*Yarick v. PacifiCare of California*,
179 Cal. App. 4th 1159 (2009) .......... 17

*Yeomans v. Blue Shield of Cal.*,
712 F. Supp. 3d 1336 (C.D. Cal. 2024) .......... 13

**Statutes**

28 U.S.C. § 1441 .......... 6

28 U.S.C. § 1442(a)(1) .......... *passim*

42 U.S.C. § 1395w-22(d) .......... 17

42 U.S.C. § 1395w-23 .......... 4

42 U.S.C. § 1395w-24 .......... 4

42 U.S.C. § 1395w-26(b)(3) .......... 2, 15, 17

Medicare Act, 42 U.S.C. §§ 1395w-21 through 1395w-28 .......... *passim*

**Other Authorities**

42 C.F.R. § 422.111 .......... 4

42 C.F.R. § 422.112(a) .......... 17

42 C.F.R. § 422.402 .......... 15, 17

42 C.F.R. § 422.504(a) .......... 17

42 C.F.R. § 422.2260 .......... 4

42 C.F.R. § 422.2262(a) .......... 4

42 C.F.R. § 422.2264 .......... 4

Fed. R. Civ. Proc. 12(b)(6) .......... 6

*Medicare Managed Care Manual*,
CMS Pub. No. 100-16 (available at https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/mc86c04.pdf) .......... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

As a preliminary matter, Plaintiff Catherine Brown ("Plaintiff") filed a First Amended Complaint on March 23, 2026 that no longer names UHC of California ("UHCCA") as a defendant. *See generally* ECF No. 13. Plaintiff nevertheless has not withdrawn her pending Motion to Remand, even though it was filed before the now-operative First Amended Complaint and is based solely on allegations asserted against UHCCA in the original complaint. Because the original complaint has been superseded, the Motion to Remand relates to a pleading that is no longer operative. Counsel for UHCCA is meeting and conferring with Plaintiff's counsel and expects that the parties will provide further clarification to the Court regarding the operative claims and the resulting jurisdictional posture of this action. In the interim, UHCCA submits the following Opposition so that Plaintiff's arguments in the Motion to Remand are fully addressed.

## I. INTRODUCTION

Plaintiff's wrongful death and survival claims asserted against UHCCA in the original complaint arise directly from UHCCA's administration of the Medicare Advantage health plan that covers this dispute (the "MA Plan"). As a Medicare Advantage Organization ("MAO"), UHCCA contracts with the Centers for Medicare & Medicaid Services ("CMS") to provide Medicare Part C benefits to enrolled beneficiaries, including Plaintiff's mother, Lillian Marie Brown ("Ms. Brown"). In that role, UHCCA administers a federally approved Medicare Advantage plan and makes coverage and authorization determinations within a comprehensive federal statutory and regulatory framework.

Although Plaintiff pleads various state-law causes of action, UHCCA properly removed this action under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), because the entire complaint against UHCCA was premised on UHCCA's alleged failure to authorize facial surgery for Ms. Brown under the MA Plan. The challenged conduct — UHCCA's handling of coverage and authorization

determinations under the CMS-approved MA Plan — is exclusively governed by the Medicare Act, 42 U.S.C. §§ 1395w-21 through 1395w-28, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "Medicare Act"), its implementing regulations, and CMS directives governing Part C coverage determinations and appeals.

UHCCA properly removed this action to the Central District of California, and Plaintiff's Motion to Remand should be denied for the following reasons:

***First***, Plaintiff does not oppose the first element of federal officer removal; UHCCA is a "person" eligible to remove the matter under the Federal Officer Removal Statute.

***Second***, under controlling Ninth Circuit authority, UHCCA was "acting under" CMS, a federal agency, when it administered Ms. Brown's federally approved MA Plan pursuant to its contract with CMS and within the extensive CMS regulations and guidance. UHCCA's specific conduct challenged in this case — its coverage and authorization decisions, including its alleged failure to approve the requested facial surgery — arises from that federally structured role. Thus, there is a direct causal nexus between Plaintiff's claims and UHCCA's work assisting CMS in carrying out the MA program.

***Third***, UHCCA has asserted the "colorable federal defense" of preemption under the Medicare Act. Plaintiff misses the mark by focusing on her Complaint and her tactical decision to bring only state-law claims. It is well-settled that the Federal Officer Removal Statute creates an exception to the well-pleaded complaint rule. As long as a defendant asserts a "colorable federal defense," 42 U.S.C. § 1395w-26(b)(3), as UHCCA has done so here, that is sufficient for federal officer removal regardless of whether federal claims are raised in the complaint. Under the expansive preemption statute adopted by Congress, Plaintiff's state-law causes of action are preempted as against an MAO like UHCCA, if they even touch on the same subject as a federal Medicare standard. *See Aylward v. SelectHealth, Inc.*, 35

F.4th 673, 681 (9th Cir. 2022). Here, CMS not only approved the Evidence of Coverage ("EOC") setting forth the applicable plan terms for the MA Plan but also promulgated specific standards for the actual and timely coverage of medically necessary services, including the provision of urgently needed services. Irrespective of whether UHCCA will ultimately prevail on preemption (which it will), the defense is sufficiently "colorable" to have the validity of the defense decided in federal court. Indeed, this Court already granted UHCCA's Motion to Dismiss on Medicare preemption grounds with leave to amend. *See* ECF No. 11, Order Granting Motion to Dismiss. Although the Court need not resolve the merits of preemption to deny remand, its ruling underscores that UHCCA's federal defense is at least colorable, which is what Section 1442 requires.

Plaintiff's effort to cast the dispute as a purely state law tort action does not defeat removal under Section 1442. Consistent with the strong policy favoring removal under the Federal Officer Removal Statute, and because UHCCA has satisfied each requirement for federal officer removal, removal from state court was proper, and Plaintiff's Motion to Remand should be denied. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

## II. FACTUAL BACKGROUND

### A. As an MAO, UHCCA is a Highly-Regulated Federal Contractor That Administers Medicare Benefits Pursuant to Its Contract with CMS.

Under the Medicare Act, Medicare-eligible individuals may elect to receive Medicare benefits through an MA plan offered by a private organization approved by CMS, the federal agency responsible for administering the Medicare program. ECF No. 1, Notice of Removal, ¶ 27; *see also Global Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 909 (9th Cir. 2022). An MA plan is offered by a private MAO that enters into a contract with CMS to provide Medicare benefits to eligible individuals who enroll in the MA plan. ECF No. 1, Notice of Removal, ¶ 28. In exchange for providing covered Medicare benefits to enrollees,

CMS pays the MAOs a fixed amount per enrollee each month. *Id.*; *see also Global Rescue Jets*, 30 F.4th at 909 (describing the Medicare Advantage program); 42 U.S.C. §§ 1395w-23, 1395w-24.

UHCCA is an MAO that contracted with CMS to provide Medicare benefits to enrollees in its MA Plan, including Ms. Brown. ECF No. 1, Notice of Removal, ¶ 30. Every MA plan offered by UHCCA, including the MA Plan in which Ms. Brown enrolled, must be — and is — approved by CMS every year. *Id.*, ¶ 29; *see also Global Rescue Jets*, 30 F.4th at 909 (explaining that "the terms of all Medicare Advantage plans must be approved by CMS"); 42 C.F.R. §§ 422.111, 422.2260, 422.2262(a), 422.2264. As an MAO offering CMS-approved MA plans under Part C of the Medicare Act, UHCCA is highly regulated by CMS. *See* 42 C.F.R. §§ 422.1-422.2615. CMS is authorized to impose sanctions on UHCCA for non-compliance with CMS requirements. *See* ECF No. 1, Notice of Removal, ¶ 31; 42 C.F.R. §§ 422.750-422.764. In addition, UHCCA must comply with detailed "Medicare Manuals" published by CMS, such as the CMS Managed Care Manual in which CMS has further detailed the agency's "interpretation of the provisions of the Medicare Advantage statute and regulations." *See* ECF No. 1, Notice of Removal, ¶ 32; *Medicare Managed Care Manual*, CMS Pub. No. 100-16 (available at https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/mc86c04.pdf). This is not an ordinary regulatory relationship. Rather, UHCCA operates as part of the federal MA system and performs the coverage and benefit determination functions required by that system.

### B. Plaintiff's Claims Against UHCCA in the Original Complaint Are Based Solely on UHCCA's Coverage and Authorization Determinations Under Ms. Brown's CMS-Approved MA Plan.

At all times relevant to Plaintiff's claims, Ms. Brown was enrolled in the MA Plan offered by UHCCA. ECF No. 1, Notice of Removal, ¶ 34. The benefits

available under Ms. Brown's MA Plan were described in the EOC, which UHCCA issued to each enrollee. *Id.*

According to Plaintiff's original complaint (which included UHCCA as a defendant), Ms. Brown suffered a facial injury after a fall at her home. On December 7, 2024, Ms. Brown was transported to the emergency department at Defendant San Antonio Regional Hospital ("San Antonio Regional") after the fall. Complaint ("Compl."), ¶¶ 12-13.[1] The next day, on December 8, Ms. Brown was transferred to Defendant Arrowhead Regional Medical Center ("Arrowhead Regional"), where she was allegedly evaluated by the hospital's oral and maxillofacial surgery department, which determined she required facial surgery. *Id.*, ¶¶ 14, 16, 19-20. Plaintiff alleged that UHCCA denied inpatient authorization for a facial surgery under Ms. Brown's MA Plan because the requested provider, Arrowhead Regional, was "out-of-network." *Id.*, ¶¶ 20-21. After the initial denial, Arrowhead Regional purportedly appealed, but UHCCA did not authorize the surgical procedure. *Id.*, ¶ 24. Plaintiff further alleged that Ms. Brown's condition deteriorated, and she eventually passed away in September 2025 at Kindred Hospital after receiving substandard medical care. *Id.*, ¶¶ 40, 42.

Plaintiff's claims against UHCCA in the original complaint arose solely from UHCCA's administration of benefits under Ms. Brown's CMS-approved MA Plan. Specifically, Plaintiff's allegations against UHCCA were based on UHCCA's alleged negligence and refusal "to authorize the medically necessary surgery" requested at Arrowhead Regional. *See id.*, ¶¶ 24, 42.

## III. LEGAL STANDARD

### A. UHCCA's Jurisdictional Allegations Must Be Accepted as True Because Plaintiff Mounts Only a Facial Attack to Jurisdiction.

A notice of removal need contain only "a short and plain statement of the

[1] All references within to the Complaint are to the original complaint, which UHCCA submitted to the Court as Exhibit A to its Notice of Removal. *See* ECF No. 1, Notice of Removal, Ex. A.

grounds for removal." *See Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). Under this liberal pleading standard, UHCCA is required to "allege the underlying facts supporting each of the requirements for removal jurisdiction." *Id.*; *see also Friedenberg v. Lane Cnty.,* 68 F.4th 1113, 1123 (9th Cir. 2023) (applying the standard articulated in *Leite* to find that the notice of removal contained sufficient facts to invoke Section 1442 as a basis for removal); *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019) (finding that a notice of removal "'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements").

Here, Plaintiff's Motion for Remand does not challenge the truth of UHCCA's allegations with extrinsic evidence. Rather, Plaintiff "mount[s] only a facial attack, rather than a factual attack" on UHCCA's Notice of Removal. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). As such, the Court must resolve Plaintiff's facial attack in the same way as a motion to dismiss under Rule 12(b)(6). It must accept the allegations in the Notice of Removal as true, draw all reasonable inferences in UHCCA's favor, and determine whether the allegations are legally sufficient to invoke the Court's jurisdiction. *Id.*

**B. The Federal Officer Removal Statute Is Broadly Construed in Favor of Removal.**

As set forth in UHCCA's Notice of Removal, this Court has removal jurisdiction over this action pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). *See* ECF No. 1, Notice of Removal, ¶¶ 25-62; *see also Escarcega v. Verdugo Vista Operating Co., LP*, No. CV 19-9478-GW, 2020 WL 1703181, at *6 (C.D. Cal. Apr. 8, 2020); *Inchauspe v. Scan Health Plan*, No. 2:17-CV-06011-CAS, 2018 WL 566790, at *4 (C.D. Cal. Jan. 23, 2018). Unlike traditional removal, such as diversity or federal question jurisdiction under Section 1441, federal officer removal under Section 1442 is construed broadly. *Durham*, 445 F.3d at 1252. The Supreme Court and Ninth Circuit have repeatedly recognized

that removal under Section 1442 is distinct from, and "much broader than [removal] under Section 1441." *Id.* at 1253-54; *see also Friedenberg*, 68 F.4th at 1123 (explaining that a court "must interpret Section 1442 broadly in favor of removal" and that "the federal officer removal statute is to receive a generous interpretation"); *Leite*, 749 F.3d at 1122 (noting that a defendant has "much broader removal rights" under the Federal Officer Removal Statute "than . . . under the general removal statute, 28 U.S.C. § 1441"). Indeed, the Supreme Court has expressly "rejected a narrow, grudging interpretation" of the Federal Officer Removal Statute. *See Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999), *superseded by statute on other grounds as discussed in Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017). The removing party under Section 1442 is not required "virtually to win his case before" removal. *Acker*, 527 U.S. at 431. An action may therefore be removed under Section 1442 "despite the nonfederal cast of the complaint," as long as the removing party satisfies the Federal Officer Removal Statute's requirements. *Id.*; *see also Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99, 102 (D. Conn. 2007) (explaining that "even if a plaintiff's complaint does not, on its own, raise a federal question, federal jurisdiction is proper where a defendant establishes" the three criteria for federal officer removal).

## IV. LEGAL ARGUMENT

Under the Federal Officer Removal Statute, removal of any action is permitted against:

> The United States or any agency thereof ***or any officer (or any person acting under that officer)*** of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension and punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (emphasis added); *see Leite*, 749 F.3d at 1124 (holding that removal was proper under the Federal Officer Removal Statute where the plaintiff sued the defendant for actions performed under the direction of the federal

government). A private party like UHCCA is entitled to removal under the Federal Officer Removal Statute when the following three criteria are met: (1) it is a "person" within the meaning of the statute; (2) there is a "causal nexus" between the plaintiff's claims and the defendant's actions taken pursuant to a federal officer's direction; and (3) it has "a 'colorable' federal defense" to the plaintiff's claims. *Leite*, 749 F.3d at 1120; *see also Willingham v. Morgan*, 395 U.S. 402, 406-07, 409 (1969); *Durham*, 445 F.3d at 1251.

Applying the liberal pleading standard applicable to UHCCA's Notice of Removal broadly in favor of removal, as the Court must do here, UHCCA satisfies each element of the Federal Officer Removal Statute.

### A. Plaintiff Does Not Dispute That UHCCA is a "Person" Within the Meaning of Section 1442.

In her Motion, Plaintiff does not contest the first requirement of federal officer removal, *i.e.*, that UHCCA is a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *See generally* ECF No. 12, Motion to Remand. Indeed, it is well-established that a corporation is a "person" under Section 1442(a)(1). *See Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017). Thus, the first element of the Federal Officer Removal Statute is satisfied. *See Pecover v. Elec. Arts, Inc.*, 633 F. Supp. 3d 976, 984 (N.D. Cal. 2009) (finding that the plaintiffs "effectively conceded" issues that they failed to address in an opposition brief).

### B. There is a "Causal Nexus" Between Plaintiff's Claims Against UHCCA in the Original Complaint and UHCCA's Actions Taken Under CMS' Direction in Implementing the Federal Medicare Program.

The Ninth Circuit has articulated a two-prong test to meet the "causal nexus" element of the Federal Officer Removal Statute. Under the two-prong test, UHCCA must show: (1) that its actions "are 'actions under' a federal officer"; and (2) that those actions are causally connected to the dispute. *Goncalves*, 865 F.3d at 1244; *Durham*, 445 F.3d at 1251. UHCCA satisfies both prongs.

### 1. UHCCA Was "Acting Under" CMS When It Administered Ms. Brown's MA Plan.

As alleged in the Notice of Removal, UHCCA was "acting under" the direction of a federal officer — *i.e.*, CMS — when it administered Ms. Brown's MA Plan pursuant to its CMS contract and the detailed Part C regulatory framework. The phrase "acting under" a federal officer for the purpose of Section 1442(a)(1) is broad, and "the Supreme Court has made clear that the statute must be 'liberally construed.'" *Goncalves*, 865 F.3d at 1245. A private party acts under a federal officer when it is involved in an effort "to *assist*, or to *help* carry out, the duties or tasks of the federal [officer]." *Id.* (emphasis in original) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007)); *see also Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 756 (9th Cir. 2022) (holding that the Federal Officer Removal Statute applies to an employee or officer of the federal government, as well a "private person" serving as the federal government's "agent"). An important consideration is whether UHCCA "performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Watson*, 551 U.S. at 154.

The Ninth Circuit's decision in *Goncalves* is precisely on point. There, the Ninth Circuit held that three private contractors administering healthcare benefits under the Federal Employee Health Benefit Act ("FEHBA") were "acting under" a federal officer because they were serving as the federal government's agents in "the administration of a health insurance program" under close federal supervision. *Goncalves*, 865 F.3d at 1248. As the Ninth Circuit explained, when a private insurer contracts with a federal agency to be subject to extensive oversight in accordance with a federal health insurance program, the "relationship between [the federal agency] and [the private insurer] is well beyond 'the usual regulatory/regulated relationship,'" and the private insurer is "acting under" a federal officer for the purpose of Section 1442 removal. *Id.* at 1249. For that reason,

the majority of district courts "have held that MAOs administering [Medicare] Part C benefits fall within the category of highly regulated private contractors . . . 'acting under' CMS in a manner" entitling them to removal under Section 1442(a)(1). *Inchauspe*, 2018 WL 566790, at *5; *see also Escarcega*, 2020 WL 1703181, at *7 (same). As another district court recently explained, just like "the FEHBA examined in *Goncalves*, the Medicare Act empowers [CMS] to contract with [a private insurer] to effectuate the subsidized health insurance program." *Cal ex. rel. San Diego Comprehensive Pain Mgmt. Ctr., Inc. v. Eisengrein*, No. 22-CV-1648-BAS, 2023 WL 3806363, at *8 (S.D. Cal. June 2, 2023). In short, when a private party, such as UHCCA, acts pursuant to a contract with CMS to make coverage determinations and administer Medicare benefits under detailed regulation and oversight from CMS, it is "'acting under' a federal officer — CMS and the Secretary of HHS — to satisfy the first prong of the causal nexus inquiry" under Section 1442(a)(1). *Id.*

In her Motion, Plaintiff does not address any of the case law cited above and in the Notice of Removal. Instead, Plaintiff points to *Doe v. Cedars-Sinai Health System ("Cedars-Sinai")*, 106 F.4th 907 (9th Cir. 2024), but that case is inapt because it did not involve a private party acting under the supervision of the government. Rather, *Cedars-Sinai* involved a hospital's creation of its own online patient portal in response to general federal incentives encouraging health information technology. While the hospital's patient portal may have furthered the federal government's goal in promoting access to electronic health records, the Ninth Circuit explained that "simply complying with the law" is not sufficient and "something more must be present" for federal officer removal. *Id.* at 914, 916-17. A private party must be "helping" the federal government accomplish a delegated "basic governmental task," such as by providing a service or creating a product on its behalf. *Id.* at 916. Under that standard, the Ninth Circuit held in *Cedars-Sinai* that the defendant was not "acting under" a federal officer in developing the patient

portal because there was no evidence the government contracted with the defendant or would have created such a website absent the defendant's participation. *Id.* at 917.

By contrast, here, UHCCA's "effort to *assist*, or to help *carry out*, the duties or tasks" of CMS is far more than "simply complying with the law." *See Goncalves*, 865 F.3d at 1245 (emphasis in original). Critically, *Cedar-Sinai* distinguished *Goncalves*, where the defendant acted pursuant to an express delegation of responsibility and effectively served as a claims processor for the federal government. *Cedars-Sinai*, 106 F.4th at 917 (citing *Goncalves*, 865 F.3d at 1246-47). That distinction confirms that UHCCA's challenged conduct in this case was "acting under" a federal officer.

Further, in her Motion, Plaintiff contends that UHCCA was not "acting under" CMS because there is no allegation that CMS or any federal officer "directed," "dictated," or "compelled" the specific coverage and authorization decisions at issue. *See* ECF No. 12, Motion to Remand, p. 5. Plaintiff misses the point. The government does not need to micromanage each and every act of a private party for it to be "acting under" the federal officer. To the contrary, in *Goncalves*, the Ninth Circuit made clear that a plan administrator is permitted to have some level of discretion in deciding *how* to implement and administer the benefits at issue. *See Goncalves*, 865 F.3d at 1248 ("Nowhere have we found support for the proposition that only non-discretionary choices qualify for removal under Section 1442(a)(1)"). Since the ultimate "governmental task" here was the administration of a federal health insurance program, UHCCA's implementation of that program "assists in that effort regardless of whether [UHCCA has] some discretion in completing that task." *Id.*

This case is not about mere compliance with federal regulations. It concerns Plaintiff's challenge to UHCCA's handling of an authorization and coverage determination under a CMS-approved MA Plan. This is the sort of federally

structured function MAOs perform for CMS to implement the federal Medicare program. UHCCA was therefore "acting under" CMS.

**2. Plaintiff's Claims Against UHCCA in the Original Complaint Are Causally Connected to UHCCA's Federally Directed Conduct.**

The requisite "causal connection" between Plaintiff's claims against UHCCA in the original complaint and UHCCA's actions under CMS also is satisfied. *Goncalves*, 865 F.3d at 1244-45 (explaining that because the Federal Officer Removal Statute "must be liberally construed," the "hurdle erected by the causal-connection requirement is quite low"). Plaintiff's claims against UHCCA were squarely premised on the allegation that UHCCA failed to authorize facial surgery under Ms. Brown's MA Plan. *See* Compl., ¶ 42 (alleging that Ms. Brown's death was the result "of the cascade of medical complications initiated by the denial of timely facial fracture surgery" by UHCCA). That alleged failure to authorize is not collateral to UHCCA's federal role; it is the "very act" UHCCA undertook while administering Medicare benefits under Part C. Thus, "the low bar" for the causal-connection requirement is easily cleared. *See Goncalves*, 865 F.3d at 1245 (finding that where a private insurer contracted with the federal government to administer a federal health insurance program, a plaintiff's claim arising from the insurer's role in administering that federal health insurance program met the causal-connection requirement for federal officer removal); *see also Gordy v. CareMore Health Plan*, No. SACV 19-00048 JVS, 2019 WL 1237421, at *4 (C.D. Cal. Mar. 18, 2019) (finding that the causal-connection requirement is met when an MAO's actions "pertain to the administration, coverage determination, and provision of Medicare benefits").

Once again, Plaintiff argues that UHCCA's failure to authorize the requested facial surgery was its "own decision" and no federal officer "directed that authorization decision." *See* ECF No. 12, Motion to Remand, pp. 5-6. But that makes no difference. Contrary to Plaintiff's mischaracterization of the causal-nexus

prong, UHCCA "need show only that the challenged acts 'occurred *because of* what they were asked to do'" by the federal government.[2] *Goncalves*, 865 F.3d at 1245 (emphasis in original). UHCCA was asked by CMS to make coverage decisions under the MA Plan. That is the exact conduct that Plaintiff challenged against UHCCA in this case.

Plaintiff's reliance on *Lake v. Ohana Military Communities, LLC*, 14 F.4th 993 (9th Cir. 2021), also does not support a different result. In *Lake*, the Ninth Circuit held that federal officer removal jurisdiction did not exist because "'the central issue' in the causal nexus analysis—whether a federal officer directed the defendant to take the action challenged—[was] unmet." *Lake*, 14 F.4th at 1005. In reaching that decision, the Ninth Circuit noted that the defendants, who owned residential housing on a military base, did not argue that the Navy had control over their decision to disclose wide-spread pesticide contamination at the military base, and in fact, the Navy disclaimed control and management over the defendants. *Id.* at 1004-05. Unlike in *Lake*, where the defendants' relationship with the Navy was tenuous, here, UHCCA contracted with CMS as an MAO. In that role, UHCCA's coverage and authorization determinations were "subject to detailed regulations and administrative review by CMS," evincing a relationship that is "an 'unusually close one involving detailed regulation, monitoring, and supervision." *See Yeomans v. Blue Shield of Cal.*, 712 F. Supp. 3d 1336, 1342 (C.D. Cal. 2024). That is the conduct that Plaintiff challenges. There is a direct causal nexus between UHCCA's

[2] The decision in *DeFiore v. SOC LLC*, 85 F.4th 546, 556-58 (9th Cir. 2023), does not help Plaintiff either. There, the court held that, to satisfy the causal connection requirement, a defendant only has to establish that the conduct giving rise to a plaintiff's claims resulted from the defendant's work for the federal government. Under that standard, the court found a causal connection between the contractors' actions and the plaintiffs' claims because the challenged conduct — including that the plaintiffs' working conditions violated the contract between the contractors and the Department of Defense ("DOD") — occurred while the contractors discharged their security services to the DOD. *Id.* Similarly, here, the entire basis of Plaintiff's original complaint is conduct that UHCCA undertook while carrying out the duties and tasks of CMS, and therefore, the causal connection requirement is met.

federally-contracted duties and Plaintiff's tort claims against UHCCA for wrongful death and survivorship.

**C. UHCCA Has a "Colorable Federal Defense" of Preemption Under the Medicare Act.**

UHCCA has a "colorable federal defense" because Plaintiff's claims against UHCCA are preempted, in whole or in part, by the Medicare Act. The Supreme Court has expressly held that the Federal Officer Removal Statute is "an exception to the well-pleaded-complaint doctrine." *Acker*, 527 U.S. at 431; *see also Mesa v. Cal.*, 489 U.S. 121, 136 (1989) (finding that the Federal Officer Removal Statute "serves to overcome the well-pleaded complaint rule which would otherwise preclude removal even if a federal defense were alleged"). Under this exception, federal jurisdiction need not appear on the face of the complaint, but rather the third element of federal officer removal jurisdiction is satisfied as long as "the defense depends on federal law." *Acker*, 527 U.S. at 430-31.

Importantly, the colorable federal defense requirement is satisfied even when the removing party does not ultimately prevail on its defense. *See Acker*, 527 U.S. at 431 (finding the defendants presented a colorable federal defense, even though the Supreme Court ultimately rejected it on the merits); *Stirling v. Minasian*, 955 F.3d 795, 801 (9th Cir. 2020) (affirming denial of a motion to remand and noting that the court did "not express a view on whether this defense is 'in fact meritorious . . . only that it is 'colorable'"); *Leite*, 749 F.3d at 1124 (explaining that, at the removal stage, a defendant does not have to prove "that its . . . defense is in fact meritorious"); *Escarcega*, 2020 WL 1703181, at *7 (explaining that the colorable federal defense requirement "does not require a demonstration that the removing party will win its case").

UHCCA asserts a colorable federal defense. *See* ECF No. 1, Notice of Removal, ¶¶ 54-62.

### 1. Plaintiff's State-Law Causes of Action Are Preempted by the Medicare Act's Broad Preemption Statute.

The Medicare Act contains an express preemption provision for all MA plans. As established in 42 U.S.C. § 1395w-26(b)(3), the federal standards established under Medicare Part C "*shall supersede any State law or regulation* (other than State licensing laws or State law relating to plan solvency) with respect to MA plans" that are offered by MAOs. 42 U.S.C. § 1395w-26(b)(3) (emphasis added); 42 C.F.R. § 422.402 (same). In adopting the Medicare Act's broad preemption provision, Congress intended for all state laws or regulations that purport to regulate MA plans "to be preempted." *Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc. v. Emanuelli Hernandez*, 58 F.4th 5, 12 (1st Cir. 2023). Put another way, the entire field of state laws applicable to MA plans, with the exception of state licensure and solvency laws, are preempted. *Id.*

Relevant here, state-law causes of action are preempted by the Medicare Act "whether or not they would be inconsistent with federal regulations." *Aylward*, 35 F.4th at 681 (explaining that a "conflict between the state law and federal standard is unnecessary"). The preemption provision applies to "any state-law duty with respect to MA plans, regardless of whether that duty is grounded in statutory or common law, and even when the state-law duty is not inconsistent with and instead is based on . . . standards established under Part C" of the Medicare Act. *See Quishenberry v. UnitedHealthcare, Inc.*, 14 Cal. 5th 1057, 1072 (2023). As long as federal standards exist, "those standards 'supersede' *any state law duty* that would impose obligations on MA plans on that same subject." *Aylward*, 35 F.4th at 681 (emphasis added). Accordingly, when the conduct allegedly giving rise to liability is "directly regulated under Medicare," all state-law causes of action touching on that regulated conduct are preempted. *Quishenberry*, 14 Cal. 5th at 1072-73 (holding that state-law causes of action for negligence, elder abuse, and wrongful death were expressly preempted by the Medicare Act); *Escarcega*, 2020 WL

1703181, at *11 (explaining that a state-law cause of action for wrongful death was preempted where the alleged cause of the decedent's injury — a dispute over a hospital transfer — was the subject of Medicare regulations).

In *Quishenberry*, the son of a patient sued a MA plan and healthcare services administrator, alleging state-law causes of action for negligence, elder abuse, and wrongful death based on allegations that the defendants breached a duty to ensure his father received skilled nursing benefits to which he was entitled under the MA plan. *Quishenberry*, 14 Cal. 5th at 1057, 1071. In holding that the plaintiff's causes of action were expressly preempted, the California Supreme Court reasoned that the defendants' liability "would involve applying standards established under Part C" governing MAOs and therefore "hinge[d] on a determination of noncompliance with a duty rooted in federal standards established under Part C." *Id.* at 1072-73. Since resolution of the plaintiff's causes of action "would ultimately turn on the determination whether his father qualified for additional skilled nursing facility care under Part C and related regulations," they were based on duplicative state standards and preempted by the Medicare Act. *Id.* at 1073-74; *see also Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1157 (9th Cir. 2010) (holding that state statutory and common law claims predicated on conduct regulated by the Medicare Act and its implementing regulations are expressly and broadly preempted because they "would directly undermine CMS's ability to create its own standards"); *Aylward*, 35 F.4th at 681 (explaining that the preemption provision applies not just where state law conflicts with the federal regulations, but also where it "parallels, enforces, or supplements an express federal MA standard" under Part C of the Medicare Act). In light of the Medicare Act's broad preemption provision, the usual "presumption against preemption" does not apply to a claim for preemption under the Medicare Act. *Emanuelli Hernandez*, 58 F.4th at 11-12. To the contrary, "state laws that in any way relate to Medicare Advantage 'standards' are *presumed to be*

*preempted* unless they relate to licensure or solvency." *Id.* at 12-13 (emphasis added).

Here, UHCCA asserted a colorable federal defense of Medicare preemption under 42 U.S.C. § 1395w-26(b)(3). Plaintiff alleged in the original complaint that UHCCA improperly denied coverage and authorization for Ms. Brown's requested facial surgery. These acts were expressly subject to CMS' "standards established under Part C" of the Medicare Act. *Aylward*, 35 F.4th at 681. The CMS-approved MA Plan and guidelines included in Medicare Manuals and other instructions by CMS described the benefits in question. Specifically, the Medicare Act and its implementing regulations established standards for the actual and timely coverage of medically necessary services, including the provision of urgently needed services. They governed the availability of covered services. *See Yarick v. PacifiCare of California*, 179 Cal. App. 4th 1159, 1166-67 (2009) (finding that the plaintiff's state-law causes of action based on alleged denial of medically reasonable services were preempted by MMA regulations); *see also* 42 U.S.C. § 1395w-22(d) (Medicare requirements regarding providing access to medically necessary services "with reasonable promptness"); 42 C.F.R. § 422.112(a) (Medicare requirements regarding availability of, and adequate access to, covered services, including urgently needed services); 42 C.F.R. § 422.504(a) (setting forth an MAO's agreement to comply with Medicare coverage determination requirements and provide benefits "[i]n a manner consistent with professionally recognized standards of health care").

Plaintiff does not dispute that Ms. Brown's CMS-approved MA Plan, or CMS guidance regarding the provision of the benefits in question, are "Medicare Advantage 'standards'" with preemptive force under the Medicare Act. *See* 42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. § 422.402. Nor does she dispute that her state-law causes of action against UHCCA, which were premised on UHCCA's alleged failure to authorize the facial surgery, at minimum, "relate" to such standards.

Plaintiff's claims against UHCCA are therefore presumptively preempted. *See Emanuelli Hernandez*, 58 F.4th at 11-13 (explaining that "state laws that in any way relate to Medicare Advantage 'standards' are 'presumed to be preempted unless they relate to licensure or solvency'"). Indeed, Plaintiff's claims against UHCCA sought to impose alternative or additional requirements on the "same subject" governed by the Medicare Act and CMS regulations and guidance, *i.e.*, the manner in which UHCCA administered Ms. Brown's Medicare benefits. *See Aylward*, 35 F.4th at 681.

At bottom, Plaintiff's state-law causes of action against UHCCA attempted to regulate and impose state-law liability based on UHCCA's handling of coverage and authorization, including the alleged failure to authorize Ms. Brown's requested facial surgery, under the MA Plan. As in *Aylward*, Plaintiff sought "to invoke state law" to impose a duty that "parallels, enforces, and supplements" numerous federal standards "on that same subject." *Aylward*, 35 F.4th at 681. If the Court were to adjudicate Plaintiff's state-law causes of action and determine whether UHCCA breached any state-law duty by failing to authorize and cover the requested facial surgery, that would directly undermine, and effectively regulate, matters comprehensively governed by the Medicare Act, including MAOs' coverage determinations and authorization standards. "[B]ecause the standards established under Part C expressly prescribe the relevant duties of MA plans" with respect to coverage and authorization, Plaintiff's claims "on that same subject" are not only presumptively preempted, they are *actually* preempted. *Id.*

But, for the limited purpose of removal, the Court need not decide whether UHCCA would succeed on the merits of its Medicare preemption defense. *Acker*, 527 U.S. at 431; *Leite*, 749 F.3d at 1124. Under the liberal colorable federal defense requirement for federal officer removal, the presumption of preemption, by itself, is sufficient for removal.

## V. CONCLUSION

UHCCA satisfies all elements for removal under the Federal Officer Removal Statute. Accordingly, UHCCA respectfully requests that the Court deny Plaintiff's Motion to Remand.

DATED: March 26, 2026

**CROWELL & MORING LLP**

By: */s/ Jennifer Romano*
Jennifer Romano
Junga P. Kim
Kelsey A. Hill

*Attorneys for Defendant,*
UHC of California (erroneously sued as "United HealthCare Services, Inc.")